UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR SCHIFF, Trustee of the
SCHIFF FAMILY TRUST and the
SCHIFF MARITAL TRUST,

                                                        CASE NO.  09-14031

     Plaintiff,                        HON. LAWRENCE P. ZATKOFF

v.

INVESTORS NETWORK FUND, LLC,
A Michigan limited liability company,
BORROWERS NETWORK, LLC,
A Michigan limited liability company,
RANDALL SHAW, an individual, and
LORRIE GLASSFORD, and individual,

     Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 13, 2012

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motions to Dismiss [dkt 50] and for Summary Judgment [dkt 58].  The Motions have been fully briefed.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted.  For

the reasons set forth below, Defendants' Motion for Summary Judgement [dkt 58] is GRANTED, and Defendants' Motion to Dismiss [dkt 50] is dismissed as moot.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

Defendant Investor's Network Fund, LLC ("INF") is a Michigan investment firm that offered potential investors $10,000,000 in pooled mortgage notes ("the Notes"). The Notes were secured by first mortgages on residential and commercial real property located in the state of Michigan. INF offered an annual rate of return of 9% on the Notes. INF retained Defendant Borrower's Network, LLC ("BN") to service the mortgages backing the Notes, and also purchased mortgages from BN.

Defendant Randall Shaw was 100% owner of both INF and BN. Defendant Lorrie Glassford was an employee of one or both of INF and BN, and was responsible for the day-to-day activities of INF. Third-party Defendant Robert Guntmacher was a sales representative and independent contractor of INF. Guntmacher marketed and sold units in INF's 9% pooled mortgage fund to investors. One such investor was Plaintiff Arthur Schiff, whom Guntmacher connected with INF and Glassford. Plaintiff is a retired Dentist with experience as an investor who resided at different times in both California and Michigan.

After meeting with Glassford, Plaintiff purchased $300,000 worth of the Notes, paying in the following installments:

| | | |
|---|---|---|
| $50,000 | August 15, 2005 | ("Investment I") |
| $50,000 | October 12, 2005 | ("Investment II) |
| $200,000 | June 5, 2006 | ("Investment III") |

(collectively the "Investments"). Plaintiff claims that prior to making Investment I, he spoke to Glassford for about a half-hour, during which time she told him that he would be paid a 9%

2

interest return, and that his investment was secured by mortgages on property that had at least 50% equity. According to Plaintiff, he made the Investments in reliance on these statements by Glassford.

Immediately or shortly after making each of the Investments, Plaintiff received three investment certificates ("Certificates"), corresponding to Investments I, II, and III, respectively. Each Certificate stated in part that:

> [Plaintiff] has invested . . . in the 9% Pooled Mortgage Fund of [INF. Plaintiff] has met all the qualifications necessary to participate in this fund. All terms are detailed in the offering prospectus.

After making Investment I, Plaintiff began receiving the 9% interest return on that amount. Plaintiff claims that because he was receiving the monthly interest payments, and in continuing reliance on Glassford's statements to him at their first meeting, he subsequently made Investments II and III with INF. After doing so, Plaintiff continued to receive monthly 9% interest payments from INF until June 2008, when these payments ceased. According to Plaintiff, Defendants have since refused to pay Plaintiff either the monthly interest payments or the amounts he invested with INF. In March of 2011, INF filed for bankruptcy.[1]

On October 12, 2009, Plaintiff filed the instant case with the Court. Plaintiff alleges he never received the offering prospectus referenced by the Certificates after making any of the Investments, while also acknowledging that he never asked Defendants for such prospectus. Plaintiff further alleges that at the time he made Investment I (August 15, 2005), Glassford and Shaw (hereinafter, "individual Defendants") failed to inform him that INF lost money that year or that the Notes were for Michigan residents only. More specific, Count I of Plaintiff's Complaint alleges that Defendants violated the Michigan Uniform Securities Act ("MUSA"),

---

[1] According to a stipulation by the parties [dkt 28], BN also filed for bankruptcy at an unspecified date and was subsequently dismissed from this case pursuant to the stipulation.

3

MCL 451.501 *et seq.*, by: (1) selling unregistered securities; (2) failing to disclose the financial condition of the investments; and (3) falsely representing that the investments are exempt from registration. The Complaint also contains the following common law counts: Count II – Silent Fraud/Fraud; Count III – Breach of Contract; Count IV – Conversion; Count V – Unjust Enrichment; Count VI – Equitable Estoppel; Count VII – Promissory Estoppel; Count VIII – Breach of Fiduciary Obligation; Count IX – innocent/negligent misrepresentation; and Count X – Conspiracy. Counts III, VI and VII were made against BN only, and are thus not currently at issue. The remaining claims are against both individual Defendants, with the exception of Count VIII, which is made against Shaw only.

### B. PROCEDURAL BACKGROUND

As noted, Plaintiff filed this case on October 12, 2009, naming INF, BN, Glassford, and Shaw as Defendants. Due to BN's then-pending bankruptcy, the parties stipulated to dismiss BN from the case, and the Court entered an Order doing so on September 17, 2010 [dkt 29]. On March 14, 2011, INF filed a notice of a petition for bankruptcy [dkt 44], staying proceedings against INF pursuant to Section 362 of the Bankruptcy Code and leaving before the Court only Plaintiff's claims against the individual Defendants.

On February 23, 2011, Plaintiff filed a Motion for Partial Summary Judgment requesting the Court to summarily rule that:

1. Defendant Investors Fund Network, LLC received funds from Plaintiff;
2. Plaintiff received certificates for the Investments;
3. The Investments constitute securities;
4. INF was a "seller of securities" under applicable federal and state laws;
5. Plaintiff was a California resident when the investments were made;
6. INF was a Michigan entity that issued securities in Michigan;
7. The securities were not registered, and not exempt from registration;
8. The sales of securities violated MUSA; and
9. Defendants Glassford and Shaw were "control persons" under MUSA.

4

On June 20, 2011, the Court entered an Order denying Plaintiff's Motion for Partial Summary Judgment [dkt 57]. Noting that the majority of Plaintiff's requests were inappropriate for summary judgment, the Court found the only material issues presented by Plaintiff were: 1) whether Defendants sold securities in violation of MUSA, and (2) whether Defendants Glassford and Shaw were "control persons" under MUSA. With respect to these matters, however, the Court found Plaintiff's arguments to be wholly conclusory and failed to show that there was no genuine dispute as to these issues. Specifically, Plaintiff failed to present evidence that the investments were not exempt from registration. Additionally, the Court noted, and Plaintiff acknowledged, that the complaint did not allege that Glassford and Shaw are "control persons" under MUSA, nor did Plaintiff present a claim for general control-person liability.

On April 21, 2011, individual Defendants filed a Motion to Dismiss [dkt 50] the claims against Glassford and Shaw. To comply with the Court's dispositive motion deadline, individual Defendants additionally filed a Motion for Summary Judgment on July 5, 2011 [dkt 58], setting forth the same arguments presented in the previous Motion to Dismiss.

### III. STANDARD OF REVIEW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;

5

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

### IV. ANALYSIS

#### A. VIOLATION OF MICHIGAN UNIFORM SECURITIES ACT

Count I of Plaintiff's Complaint claims that Defendants violated MUSA by: 1) selling unregistered securities; and 2) making omissions and misrepresentations either before or after

6

Plaintiff made Investments I, II, and III. Defendants claim that all such MUSA claims are barred by applicable statutes of limitations.

### 1. Violation of Registration Requirements Under MUSA

While Plaintiff's Complaint fails to allege any specific provision of the MUSA Defendants violated, a MUSA action based upon alleged violations of registration requirements must commence not more than two years after the contract of sale. *Pukke v. Hyman Lippett, P.C.*, 2006 WL 1540781 at *5-6 (Mich. Ct. App. June 6, 2006). Additionally, the MUSA established a "statute of repose" that bans all claims concerning the registration of securities after expiration of two years from the sale of the security. *Id.* at *6. Further, the court in *Pukke* held that Michigan's fraudulent concealment statute (Mich. Comp. Laws § 600.5855) does not toll the two-year period of repose. *Id.* (citing *Baks v. Moroun,* 576 N.W.2d 413, 420 (Mich. Ct. App. 1998) (overruled in part on other grounds)).

Because each of Plaintiff's three Investments with INF was made more than two years before Plaintiff filed his Complaint, any claim for an alleged violation of the MUSA registration requirements is barred by the two-year statute of limitations. Accordingly, individual Defendants are entitled to a grant of summary judgment with respect to Plaintiff's MUSA registration requirements claim.

### 2. Omissions/Misrepresentations Under MUSA

Claims under MUSA based on alleged misrepresentations and failure to make disclosures may not be brought "more than 2 years after such person, in the exercise of reasonable care, knew or should have known of the untruth or omission, but in no event more than 4 years after the contract of sale." Mich. Comp. Laws § 451.810(a)(2); *See e.g., Gilbert Family P'ship v. Nido Corp*, 679 F. Supp. 679, 684-685 (E.D. Mich. 1988) (dismissing registration and

7

omission/misstatement claims pursuant to Mich. Comp. Laws § 451.810 because the securities were purchased more than two years before plaintiffs commenced the action and the action was brought five years after the plaintiffs made their last investment).

Here, Plaintiff alleges that Defendants misrepresented vital information by failing to provide him with financial statements and an offering prospectus, and by falsely characterizing that INF was financially healthy at the time Plaintiff made his Investments. In no event, however, may claims of alleged misrepresentation and failure to disclose under MUSA be brought more than 4 years after the contract of sale. *Nido Corp*, 679 F. Supp. at 684-85. Investment I occurred on August 15, 2005—over four years before Plaintiff initiated this action on October 12, 2009. As such, Plaintiff's misrepresentation and failure to disclose claims involving Investment I are barred by the statute of limitations.

As Investments II and III occurred less than 4, but more than 2 years before the date of the commencing of this action, the Court now examines whether, in the exercise of reasonable care, Plaintiff knew or should have known of the alleged untruth or omission. *See* Mich. Comp. Laws § 451.810(a)(2). More specifically, the Court will examine whether a genuine issue of material fact exists in that regard.

First, Plaintiff claims that he never received an offering prospectus, and that Defendants' failure to provide him with one constituted a failure to disclose under MUSA. Plaintiff's argument is misplaced. Plaintiff acknowledges that he received certificates corresponding to his three Investments immediately or shortly after making such Investments. Plaintiff further admits that he read the Certificates when he first received them. The text of the Certificates clearly references a prospectus. Although the Court acknowledges that reference to a prospectus does not necessarily require Plaintiff to request one, such a reference does indicate to the Court that

8

Plaintiff knew or should have known of the existence of the prospectus. If, in fact, Plaintiff did not receive a prospectus, he nevertheless knew or should have known upon receiving and reading the Certificate that Defendant was making an omission. Therefore, Plaintiff's failure to disclose claim with respect to the prospectus is barred by the two-year statute of limitations.

Second, Plaintiff claims that Defendants also failed to disclose the financial condition of INF in violation of MUSA. Under the relevant portion of MUSA, a cause of action arises when a seller of securities:

> Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, . . . and in the exercise of reasonable care *could not have known*, of the untruth or omission

Mich. Comp. Laws 451.810(a)(2)(emphasis added). Here, Plaintiff admits the prospectus states investors would receive financial statements, including a current balance sheet and income statement each year, as well as a detailed written statement regarding the application of proceeds. Had Plaintiff exercised reasonable care, he would have asked for a prospectus, and the prospectus would have indicated to Plaintiff that he was not receiving the financial information he claims was omitted in violation of MUSA. In this regard, the Court reiterates that the issue is not whether Defendant was culpable for not providing the prospectus or financial information, but rather whether Plaintiff *could have known* of this alleged omission. The Court finds that because of Plaintiff's stated understanding of a prospectus, his experience as an investor, the explicit reference to a prospectus by the Certificates, and the financial information discussed in the prospectus, Plaintiff could have, in the exercise of reasonable care, known about the alleged omissions. As such, Glassford and Shaw are entitled to Summary Judgment as to Plaintiff's MUSA claims (Count I).

**B. COMMON LAW CLAIMS**

In addition to his MUSA claims, Plaintiff also alleges several common law claims against Defendants. As an initial matter, the Court points out that Plaintiff's common law claims against the individual Defendants are inherently flawed. Plaintiff has failed to provide any legal basis for holding Glassford and Shaw individually liable for the acts or omissions of INF, a limited-liability company.[2] In his Motion for Partial Summary Judgment [dkt 38], Plaintiff for the first time raised the issue of "control person" liability as to Glassford and Shaw under MUSA. This theory of liability was in connection with Plaintiff's MUSA causes of action. Plaintiff's non-MUSA claims, however, were brought under the common law, not the statutory MUSA. As such, Plaintiff has failed to present a common law basis for holding the individual Defendants liable for INF's acts or omissions.

Notwithstanding Plaintiff's failure to adequately state common law claims against Glassford and Shaw, the Court will continue its analysis, and finds that such claims nevertheless fail for the reasons discussed below.

*1. Fraud/Silent Fraud*

To prove a claim of fraud a plaintiff must show that: (1) The defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it

---

[2] Although the Court has already decided that Plaintiff has not set forth a count for control person liability [See dkt 57], Plaintiff appears to continue seeking relief on that basis, suggesting that he is entitled to amend his complaint if the Court finds it deficient in the context of this Motion. Yet, Plaintiff has not moved for leave to file an amended Complaint, nor has he provided a proposed amendment. *See Roskam Baking Co. Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (citing *Kostyu v. Ford Motor Co.,* No. 85-1207, 1986 WL 16190, at *2 (6th Cir. July 28, 1986) (finding that district court did not abuse its discretion in not permitting plaintiff to amend his complaint, because the plaintiff did not submit a proposed amended complaint and failed to disclose what amendments he intended to make) (quotations omitted)). As such, the Court need not entertain Plaintiff's informal request.

with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Yaldu v. Bank of America Corp.*, 700 F. Supp.2d 832, 843 (E.D. Mich. 2010) (citations omitted). Regarding silent fraud, "a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure." *Zwerk v. Zehnder*, 2011 WL 1816511 *2 (Mich. Ct. App. May 12, 2011) (quoting *M&D, Inc. v. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998)). "There must also be *intent* to defraud." *Id.* (emphasis added) (citations omitted).

First, with respect to Shaw, Plaintiff acknowledges he never had any interaction with him, and it follows that Shaw could not have made any "material representations . . . that were false," nor could Shaw have had a duty to disclose any information regarding a false or misleading representation, since Shaw made no representations to Plaintiff. As such, Plaintiff's fraud/silent fraud claims against Shaw fail as a matter of law.

Second, with respect to Glassford, Plaintiff has failed to indicate what, exactly, Glassford said that was false. According to Plaintiff, Glassford informed him at their initial meeting that he would be paid a 9% interest return, and that his investment was secured by mortgages on property that had at least 50% equity. Plaintiff has failed to provide any evidence that these statements were false. Plaintiff further contends that Glassford failed to provide him with financial statements and a prospectus, and did not disclose to him that INF lost money in 2005. Yet, Plaintiff claims that the meeting between him and Glassford took place in August of 2005. Glassford could not have been required to inform Plaintiff that INF lost money in 2005 if 2005 was, at that point, still underway. Moreover, Plaintiff has not established that Glassford even had such a duty, nor whether there is anything indicating Glassford's intent to defraud Plaintiff

11

by failing to disclose. As such, Plaintiff's fraud and silent fraud claims against individual Defendants fail as a matter of law.

    2. *Conversion*

In Michigan, the elements of conversion are (1) "any distinct act of domain," (2) "wrongfully exerted," (3) "over another's personal property," and (4) "in denial of or inconsistent with the rights therein." *In re Pizzano*, 439 B.R. 445, 450 (W.D. Mich. 2010) (citing *Head v. Phillips Camper Sales and Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999)). Furthermore, "a statutory claim of conversion consists of knowingly buying, receiving, or aiding in the concealment of stolen, embezzled, or converted property." *Olympic Forest Products, Ltd. v. Cooper*, 148 Fed. Appx. 260, 265 (6th Cir. 2005) (citing Mich. Comp. Laws § 600.2919a).

Plaintiff's conversion claim must fail, as he has not presented any evidence that either Glassford or Shaw received any of the funds comprising Plaintiff's Investments. Regarding any claim that Glassford or Shaw knowingly bought, received, or aided in the concealment of such funds, Plaintiff has failed to establish or even claim that these funds were "stolen, embezzled, or converted property," as is required in Michigan. *See id*. On the contrary, Plaintiff acknowledges that Defendant Shaw lost money in INF. Therefore, Plaintiff cannot establish his conversion claim against either individual Defendant.

    3. *Unjust Enrichment*

A claim for unjust enrichment includes two elements: "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Consolidated Rail Corp. v. Grant Trunk Western R.R. Co.*, 2009 WL 3460334 *12 (E.D. Mich. Oct. 22, 2009) (citing *Dumas v. Auto Club Ins. Ass'n.*, 473 N.W.2d 652, 663 (Mich. Ct. App. 1991)) (quotations omitted).

Plaintiff fails to provide any evidence to establish that either Glassford or Shaw received any personal benefit from Plaintiff's Investments with INF. As such, Plaintiff's conversion claims fail as a matter of law.

*4. Breach of Fiduciary Duty*[3]

In order to prevail on a breach of fiduciary duty claim under Michigan law, a plaintiff must prove: (1) that defendant owed a duty; (2) that defendant breached that duty; and (3) that plaintiff was injured as a result of defendant's breach. *Plastis v. E.F. Hutton & Co.*, 642 F. Supp. 1277, 1308 (W.D. Mich. 1986). Furthermore, "fiduciary duties 'flow out of the relation subsisting between two persons of such character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith.'" *Wysong Corp. v. M.I. Industries*, 412 F. Supp.2d 612, 632 (E.D. Mich. 2005) (quoting *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761, 763 (Mich. Ct. App. 1981)). "A breach of fiduciary duty claim requires that the plaintiff 'reasonably [place] faith, confidence, and trust' in the fiduciary." *Rose v. The Nat'l Auction Group*, 646 N.W.2d 455, 464 (Mich. Ct. App. 2002) (quoting *Beaty v. Hertzberg & Golden, PC,* 571 N.W.2d 716, 722 (Mich. Ct. App. 1997)) (emphasis added).

With respect to Plaintiff's breach of fiduciary duty claim, Plaintiff relies only on Shaw's ownership of INF and BN. Yet, Plaintiff acknowledges that he had no interactions or relationship with Shaw, having met him for the first time during discovery in this case. Plaintiff has presented no evidence indicating that he placed faith, confidence, and trust in Shaw as an individual. As such, Plaintiff has failed to adequately show that a fiduciary duty existed between Plaintiff and Shaw.

---

[3] As indicated, *supra*, this claim is alleged against Shaw only.

13

*5. Innocent/Negligent Misrepresentation*

Innocent misrepresentation exists when a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. *Haines v. Maple Island Estates, Inc.*, 2009 WL 4438468 *2 (Mich. Ct. App. 2009) (citing *Forge v. Smith,* 580 N.W.2d 876, 883 (Mich. Ct. App. 1998)) (quotations omitted). "It is not necessary to prove that the person making the misrepresentations knew that the statements were false." *Id.* "Further, the false representation must be made in connection with the making of a contract, and the plaintiff and the defendant must be in privity of contract." *Id.* Additionally, the elements of negligent misrepresentation are: (1) justifiable and detrimental reliance on (2) information provided without reasonable care (3) by one who owed a duty of care. *Chesterfield Exchange, LLC v. Sportsman's Warehouse, Inc.*, 572 F. Supp.2d 856, 866 (E.D. Mich. 2008) (citing *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. Ct. App. 1989)) (quotations omitted).

With respect to Shaw, Plaintiff again submits only that Shaw was the owner of INF and BN. Plaintiff fails to present evidence that Shaw was personally involved in the transactions at issue, or that Shaw engaged in any improper activity for his own benefit, or that Shaw and Plaintiff were in privity of contract. Plaintiff's innocent misrepresentation claim must therefore fail. Additionally, Plaintiff presents no evidence that Shaw had a duty of care or, pursuant to such duty, provided information without reasonable care. As such, Plaintiff also fails to adequately present a claim of negligent misrepresentation against Shaw.

With respect to Glassford, Plaintiff claims only that she told him he would receive 9% interest and that his Investments with INF were secured by mortgages on property that had at least 50% equity. As noted, Plaintiff has yet to claim that such statements were false, let alone

provide evidence of their falsehood, and has also failed to show that he and Glassford were in privity of contract. Moreover, the promise of 9% interest is a future promise not actionable as fraud as a matter of law, since "an action for fraudulent misrepresentation must be predicated on a statement relating to a past or an existing fact . . . [f]uture promises are contractual and cannot constitute actionable fraud." *Doty v. Cleannet of Greater Michigan, Inc.*, 2003 WL 22956401 *2 (Mich. Ct. App. Dec. 16, 2003) (citing *Eerdmans v. Maki*, 573 N.W.2d 329, 332–33 (Mich. Ct. App. 1997)); *See also Webb v. First of Michigan Corp.*, 491 N.W. 2d 851, 853 (Mich. Ct. App. 1992) (finding statement that an investment would yield 18% interest was future promise not actionable as fraud). As such, Plaintiff's innocent/negligent misrepresentation claims against Glassford fail as a matter of law.

    *6. Conspiracy*

Under Michigan law, "[a] civil conspiracy is the 'combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.'" *Wrobbel v. International Broth. of Elec. Workers, Local 17*, 638 F. Supp.2d 780, 794 (E.D. Mich. 2009).

Plaintiff has failed to indicate if or how Glassford or Shaw acted in concert to accomplish a criminal or unlawful purpose. As such, Plaintiff has failed to establish his conspiracy claim.

### VII. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that individual Defendants' Motion for Summary Judgment [dkt 58] is GRANTED.

IT IS FURTHER ORDERED that individual Defendants' Motion to Dismiss [dkt 50] is denied as moot.

This case remains open as Plaintiff's claims against INF are currently stayed by INF's ongoing bankruptcy proceedings.

IT IS SO ORDERED.

Date:  January 13, 2012                                  s/Lawrence P. Zatkoff
                                                                            HON. LAWRENCE P. ZATKOFF
                                                                            U. S. DISTRICT COURT JUDGE